**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Terry HARVEY, Defendant–Appellant.**

**No. 92–50678.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1993.

Decided Aug. 31, 1993.

---

Clare S. Phillips, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Alicia Y. Blanco, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Before NOONAN, FERNANDEZ and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Terry Harvey appeals his conviction and sentence for bank robbery in violation of 18 U.S.C. § 2113(a). He claims the district court erred in: (1) finding police officers were conducting a valid investigatory stop at the time they detained and searched him; (2) finding the officers' pat-down search within the permissible scope of a *Terry* frisk; and (3) failing to entertain Harvey's collateral attack on one of his prior convictions. We affirm.

This is an open and shut case establishing no new proposition of law. We generally do not publish the many cases like this which are appealed. *See* Circuit Rule 36–2; *Burns v. United States,* 974 F.2d 1064, 1068 (9th Cir.1992). Nevertheless sometimes the law is clarified by putting an open and shut case on the books precisely to call attention to its open and shut nature, and to dispel the widely-held notion that the law is always a miasma of "it could be argued" and "you never know what a court will do." In this case, a fleeing robber was caught red-handed, in circumstances where any sensible person would assume that he was in fact the robber. He was.

## I. Facts.

On May 26, 1992, a man wearing a turquoise shirt approached teller Derek Claybourne at the Bank of America in Los Angeles. He gave Claybourne a demand note ordering him to "[g]ive me all the money you have. No dye or I will shoot someone." Claybourne gave him $1764 in currency, including bait bills, and the robber left the bank.

Claybourne looked out the window and saw the robber running down 12th Street. He told bank tellers Jonathan Punongbayan and Lesley Sheen that he had been robbed, and pointed out the robber running away. Punongbayan told officer Larry Walker, one of two off-duty police officers working as security guards at the bank, that a teller had just been robbed, and described the robber. Punongbayan described the robber as a black man in a turquoise shirt. Officer Walker remembered seeing the man in the turquoise shirt standing in line at the bank. Sheen told officer Lewis Wiggins, the other off-duty officer at the bank, about the robbery, and pointed to the robber in a turquoise shirt running down the street.

Punongbayan, Wiggins, and Walker left in Officer Wiggins' car to search for the robber. About two blocks away, and approximately three to five minutes from the time they left the bank, they turned a corner and saw a black man in a turquoise shirt walking down the street. Officer Wiggins asked Punongbayan if that was the robber, and Punongbayan said he was "pretty sure" it was, because of his appearance, build, race, sex, and "eye catching" short-sleeved turquoise blue shirt. Wiggins had an independent recollection of the robber's appearance from seeing him running away from the bank, and also recognized him. Punongbayan went from "I think that's him" to "Are you positive?"

"Yes I am. That's him" as the car got closer to the robber.

The pursuers got out of the car and, with guns drawn, said "Police. Get your hands up. Come down to your knees and lay down on the sidewalk. Spread your arms." After briefly hesitating, the robber did what he was told, although after a few minutes, he said "Fuck this, I'm running," jumped up, and ran down a passageway. After another chase and a struggle, he was caught again and handcuffed. Green, an officer patrolling the neighborhood, and Walker patted him down, felt a bulge, and retrieved $1764 in cash. Claybourne was brought to the scene. He identified the man as the robber, and the man, defendant-appellant Terry Harvey, was formally placed under arrest by uniformed LAPD officers.

## II. Motion to Suppress.

■ Harvey argues that the district court erred in denying his motion to suppress the cash seized from him by the officers after their pat-down search. We review motions to suppress de novo. *United States v. Homick,* 964 F.2d 899, 903 (9th Cir.1992). We review de novo the determination whether an arrest is based upon probable cause. *United States v. Smith,* 790 F.2d 789, 791 (9th Cir. 1986).

Harvey claims that the off-duty officers' display of force converted an investigatory stop into an arrest, for which probable cause was lacking. The government argues for characterization of the events on the sidewalk the first time the robber was brought to the ground as a *Terry* stop. We need not rule upon that contention. As the district judge correctly determined in his oral findings of fact and conclusions of law, "there was beaucoup probable cause. You don't need a *Terry* analysis."

■ Probable cause exists when police officers have " 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.' " *United States v. Del Vizo,* 918 F.2d 821, 825 (9th Cir.1990) (quotation omitted). We look to the totality of the circumstances known to the officers prior to any search conducted incident to the arrest. *Id.*

■ Would a prudent person have believed that the black man in the eye-catching turquoise shirt was the robber, based upon Wiggins' observation of him running away, and Punongbayan's identification of him? Of course. Was the information "reasonably trustworthy?" Of course. The defense makes much of Punongbayan's slight uncertainty that the man was the robber when they first turned the corner, but Punongbayan became certain as they approached, and Wiggins independently recognized the robber.

■ This is not to say that the identification was perfect or without doubt. Close to half of all people are male, a considerable portion are black, and eye-catching turquoise shirts are not rare. It is easy to mistake one person for another, even when we are acquainted. Had an innocent black male of similar build in a turquoise shirt been so unfortunate as to be walking down the street, Wiggins and Punongbayan might possibly have mistaken him for the robber. But the probabilities of all of these characteristics matching an innocent person at that time and place were not so great as to make it imprudent to rely upon what they knew for their identification. Neither certainty, nor proof beyond a reasonable doubt, is required for probable cause to arrest. *See Del Vizo,* 918 F.2d at 825. We do not need to consider whether forcing a suspect to the ground at gunpoint is merely a stop and not an arrest, where the probable cause for an arrest is open and shut.

Because there was probable cause to arrest Harvey when the officers first stopped him and ordered him to the ground, the officers' subsequent search of Harvey was a valid search incident to arrest, and Harvey's motion to suppress was properly denied. *See United States v. Potter,* 895 F.2d 1231, 1234 (9th Cir.), *cert. denied,* 497 U.S. 1008, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990) (search incident to arrest valid whether it occurs immediately before or after the defendant is formally placed under arrest, so long as probable cause to arrest existed at time of search).

## III. Challenge to Prior Conviction.

Harvey argues the district court erred in failing to entertain his collateral attack on a 1980 conviction used to sentence him as a career offender. The transcript makes clear, however, that the court did consider and

reject his attack on the merits. As Harvey has not challenged the correctness of the district court's rulings on the merits of his claims, we affirm Harvey's sentence.

AFFIRMED.