**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

LARRY JAMES GRISSOM,
*Defendant-Appellee.*

No. 06-10688

D.C. No.
CR 05-0550 MHP

OPINION

Appeal from the United States District Court
for the Northern District of California
Marilyn Hall Patel, District Judge, Presiding

Argued and Submitted
September 27, 2007—San Francisco, California

Filed April 15, 2008

Before: John R. Gibson,* A. Wallace Tashima, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Tashima

*The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## COUNSEL

Hartley M. K. West, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellant.

Geoffrey Rotwein, Law Offices of Geoffrey Rotwein, San Francisco, California, for the defendant-appellee.

## OPINION

TASHIMA, Circuit Judge:

The United States appeals the sentence imposed on Larry James Grissom following Grissom's guilty plea and conviction for distribution of cocaine base in violation of 21 U.S.C. § 841(a). The government contends that the district court erred in rejecting quantities of crack cocaine from two dismissed counts when calculating Grissom's base offense level under the United States Sentencing Guidelines ("Guidelines"). It argues that the quantities, properly considered, would have resulted in a Guidelines range 21 months higher than the sentence imposed. We have jurisdiction pursuant to 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291, and we vacate Grissom's sentence and remand.

## BACKGROUND

On July 5, 2005, a witness cooperating with federal agents arranged to purchase one ounce of crack cocaine from Grissom in the parking lot of a Best Buy store in East Palo Alto. A short time later, the witness and Grissom completed the transaction.

Less than a week later, on July 11, 2005, a cooperating witness contacted an individual named Larry Darnell Hill, Jr., to arrange the purchase of two ounces of crack cocaine. Hill told

the witness to contact Grissom, who arranged for the transaction to take place in the parking lot of the same Best Buy store. After the transaction was completed, Grissom notified the witness that the delivery was underweight, and arranged to provide the difference in amount[1] the next day. Grissom, accompanied by Hill, completed that transaction in the parking lot of an Office Depot store in East Palo Alto.

On July 19, 2005, federal agents once again arranged with a witness to purchase once ounce of crack cocaine from Hill. This time, Hill instructed the witness to meet him at a residence in East Palo Alto to complete the sale. Once at the pre-arranged location, the witness observed both Hill and Grissom approaching on the street. Hill stopped half a block away, while Grissom completed the sale outside of the residence.

Based on these three incidents, Grissom was indicted on three counts of knowingly and intentionally distributing a mixture and substance containing cocaine base in violation of 21 U.S.C. § 841(a) in the amounts of 28, 49, and 28 grams, respectively. He subsequently entered into a plea agreement in which he agreed to plead guilty to Count Two, charging him with distribution of 49 grams of cocaine base, in exchange for the dismissal of Counts One and Three. Regarding his sentence, Grissom also agreed to a base offense level of 32 and that, alternatively, his base offense level would be 34, if the court found that he was a career offender. The parties did not reach agreement as to Grissom's criminal history, and Grissom reserved his right to argue in favor of a downward departure from the calculated sentence range.

---

[1]The government notes that there is a discrepancy between the total amount of crack cocaine charged in the three counts of the indictment, 105 grams, and the amount attributed to Grissom in the Presentence Investigation Report, 113 grams. The difference most likely resulted from the failure of the indictment to include the amount left out of the underweight delivery. For sentencing purposes, the difference in amounts is not material, and we will refer to the total amount as 105 grams for the sake of consistency.

Both parties, in their respective sentencing memoranda, accepted the Guideline calculations of the Presentence Investigation Report ("PSR"), which set the base offense level at 32. Moreover, at the sentencing hearing, both parties accepted as true all material facts as set out in the PSR. The district court, however, expressed hesitation with the sentencing range advocated by the government:

> Mr. Grissom pled guilty to one count which involved 49 grams. Right?
>
> . . .
>
> He did not plead guilty to the other two counts. The other two counts involved additional grams. He was not charged with the conspiracy, he wasn't swooped up in a conspiracy; and I guess you could say that perhaps every time there is another offense of a similar nature, that somehow is relevant conduct. But when you do that, you're essentially saying, "Okay. We are working out a deal with you. You plead guilty to one count and we'll dismiss the other two," when in reality it doesn't amount to dismissing the other two because you're still going to count them out anyway; and as a result — you know — I think the base offense level — I am going to change to read 3[0], level 3[0], which I think reflects the 49 grams. Correct? That reduces it to an adjusted offense level of 3[0] with acceptance of responsibility, and line 25 [Adjusted Offense level after acceptance of responsibility], it reduces it to a level 27.

The district court then continued without interruption to discuss career offender status:

> Not only do I not think that these prior convictions really justify a career offender status; I don't even know what they mean — at least what the first one

> means at paragraph 31. And I think that as a result, the criminal history scoring overstates his criminal history . . . . I think that what more accurately is reflected is a criminal history category of a level three rather than a level four, to say nothing of pumping up to career offender status.

The district court further discussed substantive reasonableness before selecting a sentence of 87 months, which is the low end of the range for a level 27 sentence with a Criminal History Category of III. After explaining its reasons for not departing downward to the "bottom of the mandatory [statutory] minimum" of 60 months, the court asked whether there was "any legal cause why sentence should not be pronounced[.]"

The government responded, "No, your honor. I would simply note the government's objection on the record." At that point, the court stated, "I know. You know what you can do with that. Take it to appellate court, if that's what you want to do. I don't think it's worth it myself, but that's something you have to decide." This appeal followed.

## STANDARD OF REVIEW

### I

We must first decide whether the government forfeited its objection to the district court's calculation of Grissom's sentence by failing to state with specificity the asserted legal error committed by the district court. Parties must present objections to a sentence to the district court in order to assure that they will be considered on appeal. *United States v. Vieke*, 348 F.3d 811, 813 (9th Cir. 2003).

[1] In order for an objection to preserve a sentencing issue on appeal, it must have a specific substantive basis. *Id.* at 813. A specific objection "provides the district court with an

opportunity to address the error in the first instance and allows this court to engage in more meaningful review." *United States v. Santiago*, 466 F.3d 801, 803 (9th Cir. 2006) (citation and quotation marks omitted). This standard is not met when the government lodges a general objection to the court's calculation of the defendant's sentencing offense levels, then on appeal asserts specific grounds of error. *See United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995) (finding that general objection did not preserve for review claimed errors of "(1) failing to increase their offense levels . . . ; (2) granting . . . a . . . decrease in [an] offense level for acceptance of responsibility; (3) decreasing [a defendant's] offense level . . . for medical reasons; and (4) granting [another defendant] a . . . decrease in his offense level for aberrant behavior"). Nor is it met when the government presents a "pro forma policy objection" to a type of departure without actually engaging the reasoning of the court. *Vieke*, 348 F.3d at 813; *see also United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (holding that a statement which "indicated to the district court that the government's counsel wished to speak, but . . . did not inform the district court or defense counsel of the government's position" was an insufficient objection); *United States v. Riggs*, 967 F.2d 561, 565 (11th Cir. 1992) (stating that a litigant "should raise [his or her] point in such clear and simple language that the trial court may not misunderstand it").

[2] But what happens when the district court indicates that it has understood, and rejected, the substance of a party's objection? This case presents the issue of forfeiture in novel circumstances. Neither party disputes that the government objected to the sentence imposed on Grissom. Before the government articulated a basis for its objection, however, the district court stated "I know[,]" and the government pursued the matter no further. The government now contends that its own general objection, coupled with the district court's terse statement, reflects that the district court was fully aware of the government's legal position regarding relevant conduct.

**[3]** Despite the seeming facial inadequacy of the objection, we agree with the government that where the district court indicates that it understands the basis for the objection and that further argument is not desired, and the record reflects this understanding, a general objection may suffice to preserve an issue for appeal. As the government argues, the purpose of a specific objection is to allow for meaningful review by the district court and, if necessary, the appellate panel. *Santiago*, 466 F.3d at 803. Thus, the court's reassurance that it "know[s]" the substance of a party's complaint helps to allay concerns about the ability of the district court to address it. *Cf. United States v. Pineiro*, 470 F.3d 200, 204-05 (5th Cir. 2006) (concluding that the government preserved its objection to recalculating the defendant's sentence by making statements throughout the sentencing hearing arguing that the prior calculations were still appropriate); *United States v. Curry*, 461 F.3d 452, 459 (4th Cir. 2006) (excusing the government's failure to object at the end of the sentencing colloquy where the government argued vigorously throughout the hearing, such that it "made unmistakably clear its position").

**[4]** Reviewing the record, we are satisfied that the district court was indeed fully aware of the government's position regarding the district court's calculation of relevant conduct. First, the government consistently advanced its view that quantities of crack cocaine from the dismissed counts of the indictment should count for sentencing purposes. The plea agreement, PSR, and both parties' sentencing memoranda all calculated Grissom's offense level based on the total amount, 105 grams, rather than the 49 grams charged in the count of conviction. Neither party challenged this calculation at the sentencing hearing. Second, the district court's comments indicate an awareness that its decision not to consider the amount from the dismissed counts produced the government's objection. After commenting that determining the calculation based on 105 grams would not "amount to dismissing the other two [counts] because [the government would] still . . . count them out anyway[,]" the district court changed the base

offense level to "reflect[ ] the 49 grams." In short, the district court knew it was deviating from a calculation based on the total amount. Responding to the government's objection, the district court challenged the government to "take it to appellate court, if that's what you want to do." The district court's challenge to the government to appeal strongly suggests the district court recognized and disagreed with the claimed error. Therefore, we hold that the government's objection was sufficient under the circumstances to preserve its objection to the district court's calculation of Grissom's sentence.

## II

Following the Supreme Court's recent decision in *Gall v. United States*, 128 S. Ct. 586 (2007), we employ a two-part review of sentences. *See United States v. Carty*, Nos. 05-10200, 05 30120, 2008 WL 763770, at *5 (9th Cir. Mar. 24, 2008) (en banc). First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . ." *Gall*, 128 S. Ct. at 597. Second, "[a]ssuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* Prior to *Gall*, we "review[ed] the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of a case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (quotation marks and citation omitted). We do not read *Gall* to change that practice.[2] There-

---

[2]*Gall* states that "the appellate court must review the sentence under an abuse-of-discretion standard." *Gall*, 128 S. Ct. at 597. This language could suggest that both procedural and substantive elements are reviewed under this more deferential standard. Later in the same paragraph, however, following a discussion of procedural errors for which no standard of review is mentioned, the Court states that "[a]ssuming that the district court's sen-

fore, we will remand non-harmless procedural errors, *see id.*, and only proceed to review the substantive reasonableness of procedurally sound sentences.

## ANALYSIS

[5] Although the district court is no longer bound by the Guidelines, it must still consult the Guidelines for advice as to the appropriateness of a defendant's sentence. *Carty*, 2008 WL 763770, at *4. The consultation requirement involves determining the correct Guidelines range. *Id.* As the Supreme Court recently reiterated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 128 S. Ct. at 596 (citing *Rita v. United States*, 127 S. Ct. 2456 (2007)). Thus, "if the sentence imposed resulted from an incorrect application of the Sentencing Guidelines, and the error was not harmless, ordinarily we will remand to the district court for further sentencing proceedings, permitting the district court on remand to consider the proper Guidelines sentence along with other sentencing factors." *United States v. Menyweather*, 447 F.3d 625, 630 (9th Cir. 2006).

Grissom pleaded guilty to distribution of 49 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) (making it a crime to "manufacture, distribute, or dispense, or possess

tencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* The Court only explicitly applies the standard of review to the substantive reasonableness of the sentence; indeed, the district court in *Gall* committed no procedural error, *see id.* at 598, so only substantive reasonableness was at issue in the case. It therefore appears that the opinion leaves untouched the preexisting standards of review for questions of procedural reasonableness. Our recent opinion in *Carty*, while also declining to state the standard of review applied to the district court's calculation of the Guidelines range, is not to the contrary. *See Carty*, 2008 WL 763770, at *5.

with intent to manufacture, distribute, or dispense, a controlled substance"). Under 21 U.S.C. § 841(b)(1)(B)(iii), the crime carries a minimum sentence of 5 years, and a maximum sentence of 40 years.

[6] Under the Guidelines, once the district court determines the guideline most appropriate to the offense of conviction, it must determine the correct base offense level as dictated by that particular guideline. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.1(b) (2005);**³** *United States v. Crawford*, 185 F.3d 1024, 1027 (9th Cir. 1999). The guideline for distribution of cocaine base, § 2D1.1, requires that the court take into account the quantity of drugs when selecting the base offense level. U.S.S.G. § 2D1.1(a)(3). Where there are multiple drug transactions, the Application Notes to this guideline states that "the quantities of drugs are to be added." U.S.S.G. § 2D1.1 cmt. n.6.

[7] Various portions of the Guidelines make clear the fact that these quantities are to be added even if they are not part of the offense of conviction. First, the conduct determining the offense level is not limited to the conduct underlying the conviction, but can include "all relevant conduct under § 1B1.3 (Relevant Conduct) . . . ." U.S.S.G. § 1B1.1 cmt. n.1(H). Such relevant conduct applies to crimes where "the offense level is determined largely on the basis of . . . the

---

**³**We pause to note that the edition of the Guidelines Manual used is significant in Grissom's case because of changes to the guideline setting the base offense levels for quantities of crack cocaine, made effective on November 1, 2007. *See* U.S.S.G. §§ 2D1.1(a)(3), (c) (2007); *see also* U.S.S.G. app. C amend. 706 (2007). The effect of these changes will be discussed *infra*. Unless otherwise noted, however, we will refer to the 2005 Guidelines manual in evaluating the district court's calculation, because Grissom was sentenced under the 2005 Guidelines, and that version of the Guidelines is still applicable to him on remand. *See* 18 U.S.C. § 3742(g) (requiring a district court to "apply the guidelines . . . that were in effect on the date of the previous sentencing of the defendant prior to the appeal . . .").

quantity of a substance involved," U.S.S.G. § 3D1.2(d), and includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" U.S.S.G. § 1B1.3(a)(2). *See also United States v. Scheele*, 231 F.3d 492, 497 (9th Cir. 2000) ("[A] defendant who pleads guilty or is convicted of distributing the equivalent of 300 kg of marijuana will receive the same base offense level as a defendant who is convicted of distributing the equivalent of 3000 kg of marijuana, if the sentencing judge determines that he also distributed an additional 2,700 kg of marijuana."); U.S.S.G. § 1B1.3 cmt. n.3 (providing an example where three separate drug sales are counted for purposes of the base offense level even though not all are charged).

**[8]** Moreover, the Guidelines directly address the use of conduct that might fall outside the scope of a plea agreement. Guideline § 6B1.2(a) states that "a plea agreement that includes the dismissal of a charge . . . shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted." *See also* U.S.S.G. § 6B1.2 (Policy Statement) cmt. ("This paragraph prevents a plea agreement from restricting consideration of conduct that is within the scope of § 1B1.3 . . . in respect to the count(s) of which the defendant is convicted[.]"). Under this guideline, the fact that the parties agreed to dismiss the two counts involving 28 grams of crack cocaine does not affect the district court's responsibility to calculate Grissom's base offense level by taking into account those amounts.

**[9]** Further, courts have held that provisions of the Guidelines that use compulsory language require the district court to consider drug amounts from acts outside the offense of the conviction, so long as they "were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" U.S.S.G. § 1B1.3(a)(2). *See, e.g.*, *United States v.*

*Gordon*, 291 F.3d 181, 190 (2d Cir. 2002) (holding that the district court must consider conduct when it satisfies the requirements for grouping under U.S.S.G. §§ 3D1.1-2); *United States v. Kemmish*, 120 F.3d 937, 940 (9th Cir. 1997) (same); *United States v. Register*, 931 F.2d 308, 313 (5th Cir. 1991) (using mandatory language to describe § 1B1.3(a)(2)).

**[10]** We are not unmindful of the fact that "[t]he relevant conduct 'aggregation' rule . . . is a powerful prosecutorial tool[,]" in that "[t]he offense level for a relatively minor drug crime may be dramatically increased when uncharged drug quantities introduced at sentencing are aggregated." *United States v. Wilson*, 502 F.3d 718, 722 (7th Cir. 2007) (internal citations omitted). The district court was clearly concerned about such an effect in this case:

> The Court: . . . Mr. Grissom pled guilty to one count which involved 49 grams. Right?
>
> Mr. Rotwein: Yes.
>
> Ms. Morgan-Kelly: Yes.
>
> The Court: He did not plead guilty to the other two counts. . . . [W]hen you do that, you're essentially saying, "Okay. We are working out a deal with you. You plead guilty to one count and we'll dismiss the other two," when in reality it doesn't amount to dismissing the other two because you're still going to count them out anyway; and as a result — you know — I think the base offense level — I am going to change to read 3[0], level 3[0], which I think reflects the 49 grams. . . .

As noted by the district court, a calculation based on relevant conduct which includes quantities in the dropped counts may yield a sentence of the same length as if the defendant was

convicted by a jury for the total amount charged.[4] In light of the potential severity of this rule, the district court must "carefully scrutinize uncharged relevant drug conduct to ensure it bears the necessary relation to the convicted offense." *Wilson*, 502 F.3d at 723 (citation and quotation marks omitted). It cannot, however, decline to consider conduct that qualifies as relevant under the guideline.

The district court did not consider drug quantities from the dismissed counts when calculating Grissom's sentence. Grissom contends that the district court actually made a factual finding that the dismissed quantities were not part of the same course of conduct or common scheme or plan as the offense of the conviction, thereby relieving the district court of the duty to consider them. We do not agree. Grissom points to the following statement by the court to support his contention:

> The other two counts involved additional grams. He was not charged with the conspiracy, he wasn't swooped up in a conspiracy; and I guess you could say that perhaps every time there is another offense of a similar nature, that somehow is relevant conduct. But when you do that, you're essentially saying, 'Okay. We are working out a deal with you. You plead guilty to one count and we'll dismiss the other two,' when in reality it doesn't amount to dismissing the other two because you're still going to count them out anyway[.]

Grissom interprets this to mean "that because the three offenses did not factually have the characteristics of a con-

---

[4]Of course, although relevant conduct has a substantial effect on the sentencing guidelines range for drug crimes, it does not raise the statutory minimum or maximum for the crime of conviction. If Grissom had been convicted by a jury on one of the other counts, for example, he would have been sentenced under 21 U.S.C. § 841(b)(1)(A) to a term of no less than 10 years, instead of under § 841(b)(1)(B), which requires a minimum sentence of 5 years.

spiracy, which was confirmed by the fact that the government did not charge Appellee with conspiracy, the conduct underlying the two dismissed counts was not part of the same course of conduct, common scheme or plan as related to the one charge." It is clear from the context of the comment, however, that the district court was not making a finding that the dismissed drug quantities were not relevant conduct, but rather reacting to the adverse effect of taking such conduct into account, as discussed above.

Grissom's contention that the absence of explicit factual findings about relevant conduct proves that the district court found otherwise is likewise lacking in merit. The Guidelines clearly set out the factors a district must consider in determining whether assertedly related conduct counts as relevant under § 1B1.3(a). Comment 9(B) to that guideline notes several appropriate factors, including "degree of similarity . . . regularity . . . and the time interval between the offenses." U.S.S.G. §1B1.3 cmt. n.9(B). We have previously stated that "the sentencing court *must* consider the conduct's 'similarity, regularity, and temporal proximity' to the charged offenses.' " *United States v. King*, 200 F.3d 1207, 1216 (9th Cir. 1999) (emphasis added) (citation and quotation marks omitted). The fact that not one of these factors was discussed by the district court makes it highly unlikely that it intended to make a factual finding about relevant conduct.

**[11]** We thus conclude that the district court made no relevant conduct determination, but instead made an erroneous legal determination that it was not required to take such conduct into account. The district court erred by refusing to consider the dismissed quantities of crack cocaine in calculating Grissom's sentence.

## CONCLUSION

We note that the most recent version of the Guidelines, effective November 1, 2007, reduces the base offense level

for each threshold quantity of crack cocaine by two levels. *See* U.S.S.G. §§ 2D1.1(a)(3), (c) (2007); *see also* U.S.S.G. app. C amend. 706 (2007). Although Grissom must be resentenced under the 2005 version of the Guidelines, *see* 18 U.S.C. § 3742(g), on March 3, 2008, he became eligible to pursue a sentencing modification under 18 U.S.C. § 3582(c)(2). *See United States v. Ross,* 511 F.3d 1233, 1237 n.2 (9th Cir. 2008); Press Release, U.S. Sentencing Comm'n, U.S. Sentencing Comm'n Votes Unanimously to Apply Amendment Retroactively for Crack Cocaine Offenses (Dec. 11, 2007), *available at* http://www.ussc.gov/PRESS/rel121107.htm.

We also note that the district court is free to consider on remand the Supreme Court's recent decision in which it held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes . . . ." *Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007); *see also United States v. Casteneda*, 511 F.3d 1246, 1248-49 (9th Cir. 2008).

For the foregoing reasons, we vacate Grissom's sentence and remand for resentencing.

**VACATED and REMANDED**.