# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

DEPAUL BROOKS,
          *Defendant-Appellant.*

No. 08-10301

D.C. No.
2:07-cr-00411-
DGC-2

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

UAWNDRE LARUE FIELDS,
          *Defendant-Appellant.*

No. 08-10437

D.C. No.
2:07-cr-00411-
DGC-1

OPINION

Appeals from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
November 2, 2009—San Francisco, California

Filed July 8, 2010

Before: Betty B. Fletcher, William C. Canby, Jr. and
Susan P. Graber, Circuit Judges.

Opinion by Judge Canby

**COUNSEL**

Thomas E. Haney, Phoenix, Arizona, for defendant-appellant Brooks; Philip E. Hantel, Phoenix, Arizona, for defendant-appellant Fields.

Joan G. Ruffennach, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

**OPINION**

CANBY, Circuit Judge:

Following a jury trial, Depaul Brooks and Uawndre Fields both were found guilty of two counts of child sex trafficking and two counts of interstate transportation of minors for purposes of prostitution. Brooks and Fields now appeal their convictions and sentences on a number of grounds, including challenges to the sufficiency of the evidence, the denial of a suppression motion, and a sentencing enhancement. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm all of the convictions, but we vacate both sentences and remand the matter to the district court for resentencing.

**FACTUAL AND PROCEDURAL BACKGROUND**

In late April 2006, sixteen-year-old N.K. and fifteen-year-old R.O. ran away from a residential treatment center in Scottsdale, Arizona. For a brief time, the girls stayed at a

hotel with one of R.O.'s friends, who gave them methamphetamine, N.K.'s first experience with the drug. Eventually, the girls left the hotel and met Brooks and Fields, as well as another man known only as "Lee." The girls told the men that they had nowhere to go, and the men brought the girls to a different hotel room that Brooks had rented.

That night, after Fields had left, the girls told Brooks and Lee that they had run away from a juvenile detention center. The men laughed and made jokes about N.K. and R.O. being juvenile delinquents and suggested that the girls go to San Diego to work for Fields as prostitutes. The next day, Fields told R.O. that he was a pimp and asked her to work for him. When R.O. asked Fields what N.K. would do, Fields responded that R.O. could ask N.K. to come, too. During these initial conversations, R.O. told both Brooks and Fields that she and N.K. were minors.

The next day, Brooks and Fields introduced the girls to Julia Fonteneaux, a prostitute who described herself as Fields's "main chick." After Fonteneaux explained certain details about prostitution to the girls, Brooks and Fields drove R.O. and N.K. to the bus station, where the men bought the girls bus tickets to San Diego, assigning them false names.

The morning after the girls arrived in San Diego, Brooks, Fields, and Fonteneaux met the girls at the apartment of an associate of Fields, where R.O. and N.K. had slept. Fields took R.O. shopping for sexually provocative clothing and shoes, and then both men brought the girls and Fonteneaux to a motel. At Fields's direction, Fonteneaux posted prostitution ads on craigslist.com for N.K., R.O., and herself, and explained to the girls how to handle customers. Over the next two days, R.O. engaged in two or three acts of prostitution at the hotel. N.K., however, who still was disoriented by the drugs she had taken in Arizona, did not engage in any such acts.

Three days later, Brooks, Fields, Fonteneaux, and the girls traveled back to Phoenix in a rented Ford Freestyle. All of the females were dressed in provocative clothing, and R.O. and Fonteneaux understood the trip's purpose to be prostitution. Upon arriving in Phoenix, the men dropped R.O. and Fonteneaux off near the corner of 51st Avenue and McDowell Road, an area of Phoenix known for prostitution. R.O. engaged in two or three acts of prostitution, but later that night she was taken into custody by the Phoenix police after an officer who observed her on the street determined that she was underage.

After Brooks and Fields left R.O. and Fonteneaux, Brooks rented two rooms for the group at nearby hotels. Fonteneaux called Fields later that night to tell him that R.O. had been picked up by the police. The next day, Fields left N.K. at a bus station with her and R.O.'s belongings, but otherwise penniless.

After being taken into custody, R.O. recounted to the police the previous days' events and described the men involved and their rental vehicle. The following evening, using the information provided by R.O., police officers stopped Brooks and Fields in the Ford Freestyle and held them in custody for several hours. The officers also searched the Ford Freestyle at the local police precinct, discovering receipts for motel rooms and car rental and other incriminating evidence.

A federal grand jury returned a superseding indictment against Brooks, Fields, and Fonteneaux, charging each of them with two counts of child sex trafficking, 18 U.S.C. §§ 1591(a) & 2, and two counts of interstate transportation of minors for purposes of prostitution, 18 U.S.C. §§ 2423(a), (e) & 2. Fonteneaux pleaded guilty and received a reduced sentence in exchange for her testimony against Brooks and Fields.

Prior to trial, Brooks and Fields moved to suppress evidence seized from the Ford Freestyle, as well as the fruits of

that evidence, arguing that their detention on the night of April 29, 2006, as well as the accompanying search of their vehicle violated the Fourth Amendment. They also moved to dismiss Counts 3 and 4 of the indictment as multiplicitous of Counts 1 and 2. The district court denied both motions. At trial, the district court also overruled Defendants' objections to the introduction of the expert testimony of Phoenix Police Department Detective Christi Hein on the relationship between pimps and prostitutes and the business of prostitution.

A jury found Brooks and Fields guilty on all counts. The district court subsequently denied Defendants' renewed motions for judgment of acquittal. Brooks was sentenced to 97 months in prison for each count, to run concurrently. Fields was sentenced to 198 months in prison for each count, also to run concurrently.

## DISCUSSION

Brooks and Fields appeal their convictions and sentences on several grounds. Brooks alone challenges the district court's pre-trial denials of the motions to suppress evidence and to dismiss Counts 3 and 4 of the indictment as multiplicitous of Counts 1 and 2. Both Appellants challenge the district court's decision to admit Detective Hein's expert testimony. Brooks and Fields also both appeal the denial of their motions for judgments of acquittal, although Brooks appeals the denial of the motion as to all counts, while Fields appeals the denial only as to Counts 2 and 4, which related to N.K. Finally, Brooks and Fields challenge their sentences on various grounds.

## The Motion to Suppress Properly Was Denied

Brooks first challenges the district court's denial of his motion to suppress, arguing that his warrantless arrest and the subsequent warrantless search of the Ford Freestyle were ille-

gal. Reviewing de novo the denial of the motion to suppress, *United States v. Delgado*, 545 F.3d 1195, 1200 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1383 (2009), we reject Brooks's contentions.

**[1]** Brooks's warrantless arrest was proper because it was supported by probable cause. *See United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id.* (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Here, probable cause was established by the substantial correspondence between the officers' observations at the time of the arrest and the details that R.O. had provided to the police concerning the crime, the individuals involved, their vehicle, and the location where the perpetrators operated. Even if Brooks's name and appearance did not correspond exactly to R.O.'s description of the men involved, "[n]either certainty, nor proof beyond a reasonable doubt, is required for probable cause to arrest." *United States v. Harvey*, 3 F.3d 1294, 1296 (9th Cir. 1993). The considerable similarity between the officers' observations and R.O.'s description was sufficient to lead a person of reasonable caution to conclude that Brooks was one of the men who had brought R.O. and N.K. to and from California for purposes of prostitution, establishing probable cause to arrest him.

**[2]** The warrantless search of the Ford Freestyle also was proper. Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime. *See, e.g.*, *United States v. Albers*, 136 F.3d 670, 673-74 (9th Cir. 1998). "Probable cause to search is evaluated in light of the totality of the circumstances." *United States v. Pinela-Hernandez*, 262 F.3d 974, 978 (9th Cir. 2001). Under the totality of the circumstances in this case, the officers, at the time they stopped the Ford Free-

style, had probable cause to believe that the vehicle contained evidence of interstate child sex trafficking. Not only did the vehicle match R.O.'s description of the car that had transported her from San Diego back to Phoenix, but it was found in the same area where the police, less than twenty-four hours before, had picked up R.O., and its occupants largely matched R.O.'s description of the men involved. Consequently, because both the arrest and the search were proper, the district court did not err in denying the motion to suppress.

## Counts 3 and 4 Were Not Multiplicitous of Counts 1 and 2[1]

Brooks next contends that the district court erred in denying his motion to dismiss Counts 3 and 4 as multiplicitous of Counts 1 and 2, in violation of the Fifth Amendment's Double Jeopardy Clause. "The question of whether an indictment is multiplicitous—charges a single offense in more than one count—is reviewed de novo." *United States v. Vargas-Castillo*, 329 F.3d 715, 718-19 (9th Cir. 2003). In this matter of first impression, we conclude that, because 18 U.S.C. § 1591(a) and 18 U.S.C. § 2423(a) each require proof of a fact that the other does not, Brooks's multiplicity challenge fails.

**[3]** "The Fifth Amendment's prohibition on double jeopardy protects against being punished twice for a single crimi-

---

[1]The issue of multiplicity is not rendered moot by the fact that the sentences of imprisonment are concurrent. Brooks was given a $100 special assessment per count pursuant to 18 U.S.C. § 3013 ($400 total). In *Rutledge v. United States*, 517 U.S. 292, 301 (1996), the Supreme Court held that even where the associated terms of imprisonment are concurrent, "[a]s long as § 3013 stands, a second conviction will amount to a second punishment." Moreover, in *Ball v. United States*, 470 U.S. 856, 864-65 (1985), the Supreme Court cast considerable doubt on the proposition that the concurrence of a sentence could render harmless a double jeopardy violation. *See also United States v. Overton*, 573 F.3d 679, 690 (9th Cir.), *cert. denied*, 130 S. Ct. 480 (2009); *United States v. Davenport*, 519 F.3d 940, 947 (9th Cir. 2008).

nal offense." *United States v. Davenport*, 519 F.3d 940, 943 (9th Cir. 2008). "If the same act constitutes a violation of two different statutes, the test to determine whether punishment for both offenses may be imposed is 'whether each provision requires proof of a fact which the other does not.' " *United States v. Solomon*, 753 F.2d 1522, 1527 (9th Cir. 1985) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)), *superseded on other grounds as recognized by Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1314 & n.2 (9th Cir. 1995). "The elements of the offenses are determinative, even if there is a substantial overlap in their proof." *Id.*

**[4]** Counts 1 and 2 charged Brooks with violating 18 U.S.C. § 1591(a) (2005), which provided in pertinent part:

> Whoever knowingly—
>
> > (1)  in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, or obtains by any means a person . . .
>
> > . . . .
>
> knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

Counts 3 and 4 charged violations of 18 U.S.C. § 2423(a)(2005), which provided:

> Transportation with intent to engage in criminal sexual activity.—A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution . . . shall be

fined under this title and imprisoned not less than 5 years and not more than 30 years.

A comparison of the two statutes' elements persuades us that the indictment was not multiplicitous.

**[5]** First, while § 1591(a) plainly requires proof that the defendant knew that the victim was under the age of eighteen years at the time of the crime, the government need not prove such knowledge for purposes of § 2423(a). *See United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001) (explaining that § 2423(a)'s knowledge requirement "applies to the defendant's conduct of transporting the person rather than to the age of the person transported," so that "[i]gnorance of the victim's age provides no safe harbor"). Thus, if a sex trafficker lacked knowledge that the victim was underage, he could be convicted of violating § 2423(a), but not § 1591(a).

**[6]** Further, while § 2423(a) requires proof that the defendant *intended* that the victim engage in prostitution, such intent need not be proven for § 1591(a). Instead, § 1591(a) requires that the defendant *knew* that the victim would engage in a commercial sex act. Thus, for example, if a sex trafficker arranged for a minor victim to be transported to a pimp in another state, the trafficker might *know* that the victim would be caused to engage in a commercial sex act without actually having any specific intent that the victim do so. In that case, the sex trafficker could be convicted of violating § 1591(a), but not § 2423(a). While the distinction between the two mens rea requirements is fine, "it matters not that there is 'substantial overlap' in the evidence used to prove the two offenses, so long as they involve different statutory elements." *United States v. Kimbrew*, 406 F.3d 1149, 1152 (9th Cir. 2005) (quoting *United States v. Cuevas*, 847 F.2d 1417, 1429 (9th Cir. 1988)). Because § 1591(a) and § 2423(a) "have different intent requirements[,] . . . the 'same elements' test is not satisfied." *United States v. Ford*, 371 F.3d 550, 554 (9th Cir.

2004). And because each statute requires proof of a fact that the other does not, the indictment was not multiplicitous.[2]

## The District Court Did Not Abuse Its Discretion in Admitting the Expert Testimony

Brooks and Fields both appeal the district court's admission of Detective Hein's expert testimony. We review the district court's decision to admit expert testimony for abuse of discretion, *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) (en banc), and find no abuse of discretion here.

**[7]** First, Detective Hein's training and experience qualified her as an expert on the business of prostitution and the relationships between pimps and prostitutes. *See United States v. Freeman*, 498 F.3d 893, 900 n.1 (9th Cir. 2007). Detective Hein had worked as a police officer for approximately eight years, including two and a half years with the Phoenix vice enforcement unit. She had conducted approximately twenty to twenty-five full-scale child prostitution investigations, completed approximately fifty extended interviews with pimps and prostitutes, and frequently worked undercover, posing as a street prostitute and posting prostitution ads online. Detective Hein had attended several specialized trainings on child prostitution and had lectured on the subject of child prostitution. The fact that Detective Hein lacked an advanced degree, supervisory experience, previous experience as an expert witness, or relevant publications did not render her unfit to provide expert testimony. *See United States v. Smith*, 520 F.3d 1097, 1105 (9th Cir. 2008) ("No specific credentials or qualifications are mentioned [by Federal Rule of Evidence 702].").

**[8]** Detective Hein's testimony was relevant to matters at

---

[2]The *Blockburger* test is not controlling where there is "clear indication of contrary legislative intent." *Overton*, 573 F.3d at 691 (internal quotation marks omitted). Brooks, however, has "failed to present a showing of congressional intent contradicting the statutory language." *Id.* at 694.

issue in this case. "By and large, the relationship between prostitutes and pimps is not the subject of common knowledge." *Taylor*, 239 F.3d at 998. Detective Hein's testimony helped place other witnesses' testimony into context and provided the jury a means to assess their credibility. For example, Detective Hein's testimony concerning the role of the "bottom girl"—a pimp's most senior prostitute, who often trains new prostitutes and collects their earnings until they can be trusted —potentially helped the jury evaluate Fonteneaux's testimony that she was acting at Fields's direction, not on her own accord. Similarly, Detective Hein's testimony that pimps often isolate new prostitutes from familiar areas provided context for evaluating Appellants' intentions in initially transporting the girls from Phoenix to San Diego.[3]

[9] Nor was Detective Hein's testimony unduly prejudicial. Detective Hein's testimony closely fit the facts of this case and, contrary to Brooks's assertions, did not suggest that Appellants were on trial for a "wide ranging organized crime." Any alleged unfair prejudice did not outweigh, let alone "substantially outweigh[ ]," the testimony's probative value on a number of issues. *See* Fed. R. Evid. 403. Thus, we conclude that the district court did not abuse its discretion in admitting the expert testimony.

## Appellants' Motions for Judgment of Acquittal Properly Were Denied

Brooks and Fields next contend that the district court erred in denying their motions for judgments of acquittal. We review a motion for judgment of acquittal de novo, "viewing the evidence against the appellants in the light most favorable to the government to determine whether any rational trier of

---

[3]To the extent that the testimony of witnesses such as Fonteneaux contradicted Detective Hein's testimony concerning the general practices of pimps and prostitutes, this divergence simply went to the weight of the expert testimony, not its admissibility.

fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Williams*, 547 F.3d 1187, 1195 n.6 (9th Cir. 2008). We conclude that the evidence was sufficient to sustain all of the convictions.

*Counts 1 and 2*

Counts 1 and 2 of the superseding indictment charged Appellants with child sex trafficking of R.O. and N.K., respectively, in violation of 18 U.S.C. §§ 1591(a) and 2. Brooks challenges the sufficiency of the evidence as to both Count 1 and Count 2, while Fields challenges only Count 2, concerning N.K.

**[10]** Fields's challenge to Count 2 is limited to the sufficiency of the evidence that he knew N.K. was a minor. *See* 18 U.S.C. § 1591(a) (punishing sex trafficking of children where the defendant "[knew] . . . that the [victim] ha[d] not attained the age of 18 years"). This claim is unpersuasive. R.O. testified that both she and N.K. told Fields that they were underage. Further, the jury had the opportunity to consider N.K.'s appearance during her testimony, at which time she was eighteen. This evidence is sufficient to sustain Fields's conviction as to Count 2.

**[11]** Brooks's challenges to Counts 1 and 2 also fail. As in Fields's case, a rational jury could have found beyond a reasonable doubt that Brooks knew that R.O. and N.K. were under eighteen. R.O. testified that she told Brooks and Lee that she and N.K. were underage and had run away from a juvenile detention center, causing the men to joke about how the girls would get them into trouble. And, as in the case of N.K., the jury had an opportunity to evaluate R.O.'s appearance and demeanor while testifying, at which time she was seventeen.

**[12]** There also was sufficient evidence to prove that Brooks satisfied the actus reus requirement of § 1591(a).

While Brooks argues that there was no evidence that he persuaded or enticed either R.O. or N.K. to become involved in prostitution, § 1591 also imposes liability on anyone who "recruits, . . . harbors, transports, provides, or obtains by any means" a minor for purposes of prostitution. 18 U.S.C. § 1591(a)(1). Here, a rational jury could find beyond a reasonable doubt that Brooks knowingly transported, as well as harbored, the girls. The jury could infer from N.K.'s and R.O.'s testimony that Brooks assisted Fields in purchasing bus tickets for N.K. and R.O. to travel to San Diego. R.O. and Fonteneaux also testified that Brooks personally transported the girls all or part of the way from San Diego to Phoenix. Furthermore, physical evidence introduced at trial, including hotel receipts, was sufficient to prove that Brooks harbored the girls in rented hotel rooms.

[13] A rational jury also could find beyond a reasonable doubt that Brooks acted "knowing . . . that [R.O. and N.K.] . . . [would] be caused to engage in a commercial sex act," 18 U.S.C. § 1591(a). R.O. testified that, on the night the girls met the men in Phoenix, Brooks and Lee discussed with R.O. and N.K. the possibility of the girls going to San Diego to work as prostitutes. Then, the next day, Brooks assisted Fields in buying bus tickets so that the girls could travel to San Diego. Later, when Brooks transported the group from San Diego back to Phoenix, both girls were dressed in provocative clothing. And upon arriving back in Phoenix, Brooks left R.O. at 51st Avenue and McDowell Road, an area known for prostitution, and brought N.K. to a hotel, suggesting that the men had plans for her to be caused to engage in prostitution in the future.[4]

---

[4]N.K. was not in fact caused to engage in prostitution. The jury, however, could infer that N.K. did not engage in such acts simply because she still was very affected by the drugs she took in Phoenix. Further, as we recently explained in another § 1591(a) appeal,

> [w]hen an act of Congress requires knowledge of a future action, it does not require knowledge in the sense of certainty as to a future act. What the statute requires is that the defendant know

Therefore, we reject Brooks's sufficiency-of-the-evidence challenge to Counts 1 and 2.

## *Counts 3 and 4*

Counts 3 and 4 of the superseding indictment charged Appellants with interstate transportation of minors for purposes of prostitution, in violation of 18 U.S.C. §§ 2423(a) and 2. Brooks challenges the sufficiency of the evidence as to both Count 3 and Count 4, concerning R.O. and N.K., respectively, while Fields challenges only Count 4. These appeals concern just one element of § 2423(a): intent that the minor engage in prostitution. *See* 18 U.S.C. § 2423(a) (criminalizing the knowing transportation of a person under the age of eighteen "with intent that the individual engage in prostitution").

**[14]** Appellants' contentions have no merit. Fields's acts were sufficient to prove that he intended not just R.O., but also N.K., to engage in prostitution when he transported them to and from San Diego. Fields bought both girls bus tickets to San Diego under false names, bought both girls provocative shoes upon their arrival, and directed Fonteneaux to post prostitution ads for both girls on craigslist.com and to instruct both girls on receiving customers. Further, when the group, at Fields's direction, returned to Phoenix, both girls were dressed in "working clothes," indicating his intent that both R.O. and N.K. be caused to engage in prostitution. Thus, we uphold Fields's conviction as to Count 4.

**[15]** Although it is a closer case, we also conclude that the evidence, when viewed in the light most favorable to the pros-

---

in the sense of being aware of an established modus operandi that
will in the future coerce a prostitute to engage in prostitution.

*United States v. Todd*, 584 F.3d 788, 792 (9th Cir. 2009). This standard is satisfied here even though N.K. did not ultimately engage in any acts of prostitution.

ecution, was sufficient for a rational jury to conclude that Brooks, too, acted with the intent that the girls engage in prostitution. R.O. testified that Brooks, with Lee, first talked to the girls about working for Fields as prostitutes in San Diego. Fonteneaux also testified that, while Brooks did not appear to be paid by Fields for his assistance, he benefitted from the association by not having to pay for his food or lodging. These perquisites were funded by money Fields brought in from prostitution, which a rational jury could infer that Brooks knew. These facts, together with Brooks's involvement in transporting the group and securing hotel rooms for them, were sufficient for a rational juror to conclude that Brooks intended that the girls engage in prostitution. Accordingly, Brooks's challenges to Counts 3 and 4 fail.

## Brooks's and Fields's Sentences Must Be Vacated

Last, Brooks and Fields raise various challenges to their sentences. Brooks asserts that the district court committed procedural error in applying two enhancements to his sentence and also contends that his sentence was substantively unreasonable. Fields challenges the district court's failure to grant use immunity to a witness who wished to testify at his sentencing hearing.

### *Brooks*

In reviewing a sentence, we first consider whether the district court committed significant procedural error. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). In determining whether the district court committed procedural error, we review " 'the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of a case for abuse of discretion, and the district court's factual findings for clear error.' " *United States v. Grissom*, 525 F.3d 691, 696 (9th Cir. 2008) (quoting *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006)). If we find significant procedural

error, we will remand for re-sentencing. *United States v. Pham*, 545 F.3d 712, 716 (9th Cir. 2008). "If no such material error . . . is found, however, we may go on to evaluate the sentence for its substantive reasonableness under an abuse of discretion standard." *Id.*

1

**[16]** Brooks first challenges the district court's application of a two-level sentencing enhancement that applies if "a participant . . . unduly influenced a minor to engage in prohibited sexual conduct." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2G1.3(b)(2)(B). We conclude that the application of § 2G1.3(b)(2)(B) to Brooks's sentence was proper.

**[17]** Section 2G1.3(b)(2)(B) applies when "a participant" unduly influenced a minor to engage in prostitution. *Id.* "Participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.* § 3B1.1 cmt. n.1. Thus, even if Brooks, who has been found criminally responsible for the crime, did not personally unduly influence the girls, he can be subject to the enhancement if another criminally responsible individual, such as Fields, exercised the requisite undue influence. *See United States v. Egge*, 223 F.3d 1128, 1134 (9th Cir. 2000) (concluding that a convicted defendant, who plainly "has been held criminally responsible for the commission of the offense," constitutes a "participant" in the crime).

**[18]** The district court's conclusion that Fields exercised undue influence over the victims was not clearly erroneous. The guideline's Commentary establishes that "[i]n a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption," U.S.S.G. § 2G1.3 cmt. n.3(B), that such "participant . . . unduly influenced a minor to engage in prohibited sexual conduct," *id.* § 2G1.3(b)(2)(B). Because Fields, a participant in the crimes, is more than ten years older than the girls, the district court

properly applied a rebuttable presumption that Fields exercised "some degree of undue influence" over the girls. *Id.* § 2G1.3 cmt. n.3(B).

The only evidence that Brooks provided in attempting to rebut the presumption of undue influence was that the girls willingly had engaged in sexual relations with other men just before and after meeting Brooks and Fields, under circumstances suggesting that the girls had received a benefit, such as a place to stay. However, "[t]he victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation." *United States v. Dhingra*, 371 F.3d 557, 567-68 (9th Cir. 2004) (discussing 18 U.S.C. § 2422(b), enticement and coercion of a minor for purposes of prostitution). Nothing in the record suggests that the girls were inclined to engage in *commercial* sex acts before they met Brooks and Fields, and counsel's suggestion at oral argument that the girls were "giving it away" is not well taken.

[19] Even without the rebuttable presumption, the record supports the conclusion that both Fields and Brooks unduly influenced the girls to engage in prostitution. When R.O. and N.K. encountered Brooks and Fields, the girls had no money, no job and, as runaways, nowhere to live. Fields showed R.O. a large sum of money and told her that if she worked for him she would travel, be paid, and have a good life, and that N.K. could come, too. Brooks, after learning that R.O. and N.K. had run away from a juvenile detention center, also suggested that the girls go to San Diego to work for Fields as prostitutes. Neither of the girls had engaged in prostitution before meeting Brooks and Fields. Under the circumstances, the district court's application of the § 2G1.3(b)(2)(B) enhancement to Brooks's sentence was not an abuse of discretion. *See United States v. Patterson*, 576 F.3d 431, 443 (7th Cir. 2009) (upholding the application of an analogous undue influence enhancement where the defendant was forty-two and the vic-

tim was fourteen; the victim had never worked in prostitution before receiving the defendant's encouragement; and the victim was "destitute and penniless" when the defendant urged her to travel with him for purposes of prostitution), *cert. denied*, 130 S. Ct. 1284 (2010).

2

**[20]** Brooks also challenges the district court's application of a two-level sentencing enhancement for having had custody, care, or supervisory control over the girls. Section 2G1.3(b)(1) of the Sentencing Guidelines provides: "If (A) the defendant was a parent, relative, or legal guardian of the minor; or (B) the minor was otherwise in the custody, care, or supervisory control of the defendant, increase by 2 levels." U.S.S.G. § 2G1.3(b)(1). Because Brooks is not a parent, relative, or legal guardian of R.O. or N.K., only subsection (B) is at issue.

In applying the enhancement to Brooks's sentence, the district court reasoned that § 2G1.3(b)(1) is to have "broad application," including when a minor victim is "entrusted to the defendant, whether temporarily or permanently." *Id.* § 2G1.3 cmt. n.2(A). Citing an Eleventh Circuit decision holding that the enhancement applies even when the victim entrusts herself to the defendant, *United States v. Jennings*, 280 F. App'x 836, 844-45 (11th Cir. 2008) (per curiam) (unpub.), the district court concluded that R.O. and N.K. had entrusted themselves to Appellants' care, custody, and control, rendering the enhancement applicable.

On appeal, Brooks argues that the district court misinterpreted the scope of § 2G1.3(b)(1)(B), contending that the guideline "was intended to punish those who exploit their position of authority as a temporary parent." Although it is a close question, we conclude, in this matter of first impression,

that the district court erred in interpreting the scope of § 2G1.3(b)(1)(B).[5]

**[21]** We begin with the guideline itself. Section 2G1.3(b)(1) reaches not just situations where defendants are parents, relatives, and legal guardians of minors, but also situations where "the minor was *otherwise* in the custody, care, or supervisory control of the defendant." *Id.* § 2G1.3(b)(1)(B) (emphasis added). It is true that, in a technical sense, Brooks exercised a form of "care," "custody," or "supervisory control" over R.O. and N.K. through his participation in the offenses. But the use of the adverb "otherwise" in subsection (B) does not entirely divorce subsection (B) from its alternative in subsection (A). If "otherwise" means *any* type of "custody, care, or supervisory control," then subsection (A) is wholly superfluous. Such an interpretation would also threaten to merge the enhancement into the definition of the underlying offense. We therefore conclude that subsection (B) refers to a defendant's role with respect to the minor that is comparable to that of the parents, relatives, and legal guardians covered by subsection (A). Indeed, care, custody, and supervisory control of minors are quintessential duties of subsection (A) defendants. The word "otherwise," indicates that a subsection (B) defendant exercises such parent-like care, custody, or supervisory control albeit "in a different way or manner" or "in different circumstances" than traditional guardians. Webster's New International Dictionary 1598 (3d ed. 1976).

The Sentencing Commission provided additional guidance on the scope of § 2G1.3(b)(1), which adds further support to our conclusion that subsection (B) applies only to defendants who exploit a pre-existing parent-like position of authority that Brooks simply did not possess. Most significantly, the Commentary provides examples of individuals to whom the

---

[5]We review de novo the district court's interpretation of the guideline. *See United States v. Kimbrew*, 406 F.3d 1149, 1152 (9th Cir. 2005).

enhancement may apply, citing "teachers, day care providers, baby-sitters, or other temporary caretakers." U.S.S.G. § 2G1.3 cmt. n.2(A). Teachers, day care providers, and baby-sitters all act *in loco parentis*, in a position of authority over the minor that exists apart from the conduct giving rise to the offense.**[6]** The Commentary does not expressly limit application of the enhancement to defendants with similar authority, but these examples reinforce the inference that a subsection (B) defendant's role with respect to a minor must be broadly comparable to that of parents, relatives, and legal guardians.**[7]**

**[22]** Further, although the Commentary instructs that the enhancement have "broad application," it also explains that courts should "look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship." *Id.* § 2G1.3 cmt. n.2(A). Thus, the enhancement may apply to defendants acting in a breadth of positions of authority over the minor victim *that fall short of legal guardianship*. But we do not read "broad application" to mean that the enhancement applies where there was *no* "actual relationship" outside of the conduct surrounding the offense.

**[23]** Limiting § 2G1.3(b)(1)(B) to such defendants makes

---

**[6]**Pursuant to the canon of *ejusdem generis*, the "other temporary caretakers" referenced in the Commentary must possess characteristics shared by teachers, day care providers, and baby-sitters. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001) ("Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." (quoting 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.17 (1991) (alteration omitted)).

**[7]**This inference gains some support from the fact that the Commentary, in an apparent attempt to prevent double-counting, instructs that courts should not, when § 2G1.3 applies, apply a separate enhancement in § 3B1.3 that also is concerned with abuse of authority. *See id.* § 2G1.3 cmt. n. 2(B).

sense: it is the abuse of authority over the minor that makes the offense conduct more egregious and thus worthy of enhancement. *Cf. id.* § 2A3.1 cmt. background (explaining that a similar "care, custody, or supervisory control" enhancement applies because of "the potential for greater and prolonged psychological damage"). In cases like Brooks's, where the relationship between the defendant and the minor arose almost entirely from the crime itself, application of this enhancement is warranted neither by the language of the guideline and its Commentary nor by common sense. Although we do not rule out the possibility that the necessary parent-like relationship could evolve from volitional acts of a minor and a defendant, we hold that, for the enhancement to apply, the defendant must have held a position of parent-like authority that existed apart from conduct giving rise to the crime. Thus, because the district court misinterpreted the scope of § 2G1.3(b)(1)(B), the court miscalculated Brooks's Guidelines range, committing significant procedural error. *See Carty*, 520 F.3d at 993. Accordingly, we vacate Brooks's sentence and remand for resentencing.[8]

## *Fields*

**[24]** Although Fields, like Brooks, objected in the district court to the enhancement for "custody, care, or supervisory control" under Guideline § 2G1.3(b)(1), he did not raise the issue in his appellate briefs. "Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief." *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005). In some circumstances, however, we may entertain issues not raised, and those circumstances are present here. First, the government is not prejudiced by Fields's failure to raise the issue, because it briefed and argued that issue in response to Brooks's appeal. *See*

---

[8]In light of our remand for resentencing, we decline to reach Brooks's argument that his sentence was substantively unreasonable. *See, e.g.*, *United States v. Forrester*, 592 F.3d 972, 991 (9th Cir. 2010).

*United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992); *United States v. Baker*, 999 F.2d 412, 417 (9th Cir. 1993). Second, the issue is purely legal and the record in the district court was fully developed. *See United States v. Berger*, 473 F.3d 1080, 1100 n.5 (9th Cir. 2007). With these conditions met, we conclude that a third condition of manifest injustice is also met: it would be a manifest injustice to vacate the sentence of one co-defendant but uphold the sentence of the other "when the same error affected both defendants."[9] *Ullah*, 976 F.2d at 514; *see also United States v. Molinaro*, 11 F.3d 853, 858 n.9 (9th Cir. 1993); *Walter v. United States*, 969 F.2d 814, 817 (9th Cir. 1992). We therefore vacate Fields's sentence and remand for resentencing.[10]

## CONCLUSION

For the foregoing reasons, we affirm Brooks's and Fields's convictions, but we vacate their sentences and remand for resentencing.

## CONVICTIONS   AFFIRMED;   SENTENCES VACATED; REMANDED FOR RESENTENCING.

---

[9]The district court sentenced Fields below the Guideline level, but that departure was based primarily on over-representation of Fields's criminal history and factors in Fields's personal background. On this record, we cannot conclude that Fields's sentence was unaffected by the erroneous two-level enhancement under Guideline § 2G1.3(b)(1)(B).

[10]Because we remand Fields's case for resentencing, we decline to address his contention that the district court erred in failing to issue an order *sua sponte* to compel the government to grant use immunity to a proposed witness to testify at his sentencing.