UNITED STATES of America,
Plaintiff–Appellee,

v.

Alberto PINELA–HERNANDEZ,
Defendant–Appellant.

No. 00–50371.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2001

Filed Aug. 28, 2001

Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney; and Edward C. Weiner, Office of the

United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: HUG, GRABER, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Alberto Pinela–Hernandez was convicted of conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and of possession of marijuana with intent to distribute, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was arrested after driving a car that was found to contain more than two hundred pounds of marijuana. Before trial, Pinela–Hernandez moved to suppress the evidence seized from the car. The district court denied the motion, and he was convicted on both counts. Pinela–Hernandez appeals, contending that the agents lacked probable cause to search his car. He also argues that he must be re-sentenced in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

We affirm the judgment of the district court.

## I

United States Customs Service agents received a tip that on July 23, 1999, a blue van bearing a load of cocaine would cross the border at Calexico from Mexico into California, and that the drop-off location was to be a 7–11 store in El Centro, California. On that date, customs agents spotted a vehicle matching this description at the Calexico port of entry and followed it. At the designated 7–11 store in El Centro, a new driver entered the van and the former driver left in a different car. The van was then driven to a residence at 405 State Street, El Centro. The van parked at that residence, stayed for a few minutes, then returned to Mexico. Agents did not see the van being unloaded at the State Street residence. A tape from a surveillance camera trained on the residence that afternoon also did not show the van being unloaded.

A burgundy Mercury Grand Marquis arrived at the State Street house later that afternoon. After it backed into the driveway, a black Nissan pulled in directly in front of it, blocking the surveillance camera's view of the Mercury. During the time the Mercury was parked at the house, two agents drove by separately. Agent Christensen testified that he saw that the trunk of the Mercury was open, and "several people [were] standing around it. And one subject [was] bent over the trunk." He testified that he did not see anything being put into the trunk. Agent Perez testified that he too saw that the Mercury's trunk was open and he "saw two people standing at the rear of the trunk." He did not see anything being put into the trunk.

About fifteen minutes after it arrived, the Nissan left. Then the Mercury left with two men in it, followed by an Oldsmobile. The agents followed the Mercury but lost it. They found the Mercury a short time later at a Burger King restaurant in the Valley Plaza Shopping Center and followed it as it left the shopping center. It appeared to the agents that the Mercury accelerated in an attempt to evade them when its occupants saw the agents following their car. The Mercury then drove at approximately seventy-five or eighty miles per hour on city streets circling the shopping center. The Mercury then re-entered the Valley Plaza shopping center and parked near an office of the Social Security Administration. When the agents reached the car, it was empty, and Defendant Pinela–Hernandez, his wife, and their child

were walking away. When the police approached, Pinela–Hernandez separated from his wife and child, and the two adults walked rapidly in different directions. One of the agents shouted to Pinela–Hernandez that they were police and motioned for him to come to their car. He did so, and they patted him down.

One of the agents looked into the back window of the Mercury and saw a large package with a distinctive wrapping partially covered by a blanket in the back of the car. Within minutes after Pinela–Hernandez was patted down, someone opened the trunk of the Mercury. It is not clear from the record who opened the trunk, but it appears to have been one of the agents. We assume for the purposes of our analysis that this is so. The trunk contained several large packages wrapped in the same fashion as the large package in the back of the car. One of the agents cut into one of the packages and discovered a "green leafy substance" inside. There were a total of 214.6 pounds of marijuana in the car and the trunk. After finding the marijuana in the Mercury, some agents went back to the 405 State Street residence, where they found 428.5 additional pounds of marijuana. Pinela–Hernandez unsuccessfully moved before trial to suppress the evidence seized from the Mercury.

The indictment charged Pinela–Hernandez with one count of conspiracy to possess approximately 292.32 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and one count of possession of 97.54 kilograms of marijuana with intent to distribute, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. At the close of evidence, the court instructed the jury that the government was not "required to prove that the amount or quantity of the marijuana was as charged in the indictment."

The jury convicted Pinela–Hernandez on both counts. At sentencing, the district court held that the government had met its burden of proving that Pinela–Hernandez had possessed the drugs found in the car, but not those found in the house. The court sentenced him to thirty-seven months' imprisonment, a significantly shorter term than recommended in the presentence report. Pinela–Hernadez did not object to the length of the sentence. Pinela now appeals both the denial of his motion to suppress and the length of his sentence.

II

■■■ A district court's determination of probable cause presents mixed questions of law and fact, which we review *de novo*. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). We review findings of historical fact for clear error and "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* Because Pinela–Hernandez failed to object to his sentence below, we review his appeal of the sentence for plain error. *United States v. Nordby*, 225 F.3d 1053, 1060 (9th Cir.2000).

III

■■ There was some confusion in the district court over the standard required for the agents' search of the car, and it is not entirely clear what standard the district court actually used. However, both sides agree that the search had to be supported by probable cause, not just reasonable suspicion. For the reasons that follow, we hold that there was probable cause to search the car and that the district court properly denied the motion to suppress.

The Supreme Court has held that police may conduct a warrantless search of a

vehicle if they have probable cause to believe that it contains contraband. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *see also United States v. Ross,* 456 U.S. 798, 799, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). This rule is known as the "automobile exception" to the general rule that the police must obtain a warrant before executing a search. *California v. Carney,* 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The reasons for this exception are twofold: the expectation of privacy in one's vehicle is less than in one's home, and the mobility of vehicles necessitates faster action on the part of law enforcement officials. *See id.* at 390–91, 105 S.Ct. 2066.

■ The Court has defined probable cause for a search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also Wartson v. United States,* 400 F.2d 25, 27 (9th Cir. 1968) ("Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt." (citation and internal quotation marks omitted)). Probable cause to search is evaluated in light of the totality of the circumstances. *Gates,* 462 U.S. at 238, 103 S.Ct. 2317.

In *United States v. Arias,* 923 F.2d 1387, 1389 (9th Cir.1991), we held that probable cause to search a car existed where there was "a pattern of suspicious activity consistent with a drug transaction, carried out either by individuals who had explicitly agreed to sell drugs to a government informant, or by appellants, who worked for those individuals." In another case, we concluded that the defendant's "nervousness, his inconsistent statements regarding the ownership of the car, and the lies about not possessing a trunk key or a weapon constituted probable cause to

search the trunk." *United States v. Koshnevis,* 979 F.2d 691, 695 (9th Cir.1992). We have also held that when a customs agent received information "from a confidential reliable informant that [a defendant] would be carrying drugs from Seattle to Portland in a dark Mercedes," and when the car was put under surveillance and followed along the route described by the informant, agents had probable cause to search the car. *United States v. Diaz–Rosas,* 13 F.3d 1305, 1306–07 (9th Cir. 1994).

■ These cases support our conclusion that the agents in this case had probable cause to search Pinela–Hernandez's car. The following evidence, taken as a whole, is sufficient to create probable cause: (1) in accordance with a tip, a blue van brought a load of cocaine through the Calexico port of entry; (2) in accordance with the same tip, the van went to a 7–11 store in El Centro; (3) there was a change of drivers at the 7–11 store; (4) after going where the tipster said it would, the van then went to the residence at 405 State Street in El Centro; (5) the Mercury Grand Marquis went to the same residence later that day; (6) the Mercury's trunk was open and several people were standing around it while it was at the house, while another car was parked in front of the Mercury, blocking it from view from the street; (7) the Mercury traveled at very high speeds on city streets, giving rise to a reasonable inference that this was done in an attempt to evade the agents; (8) even though the Mercury traveled at such high speeds, it only circled, and then returned to, the same shopping mall from which it had come; (9) after parking the Mercury, the two adult occupants of the car left it quickly and in different directions as if attempting to evade the agents; and (10) a partially covered, large, distinctively wrapped package was in plain view in the

back of the Mercury. The Supreme Court has held that if "probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross,* 456 U.S. at 825, 102 S.Ct. 2157. Because there was probable cause to search the car, there was probable cause to open the trunk and to search the packages that turned out to contain marijuana. The district court therefore properly denied the motion to suppress.

## IV

 In *Apprendi v. New Jersey,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. If the length of the sentence imposed on Pinela–Hernandez required that there have been a minimum quantity of marijuana, Pinela–Hernandez's due process rights under *Apprendi* would have been violated by the failure of the jury to find that quantity beyond a reasonable doubt. However, Pinela–Hernandez was sentenced under 21 U.S.C. § 841(b)(1)(D), which provides for a maximum sentence of five years' imprisonment for a person convicted of possession of "less than 50 kilograms of marihuana." That section requires that there be some marijuana, but it does not require that there be more than a specified amount. (Indeed, it requires that there be *less* than a specified amount.) There is no dispute that there was some marijuana, and Pinela–Hernandez was sentenced to a total of thirty-seven months imprisonment, which is less than the possible maximum sentence under § 841(b)(1)(D). We hold that there was no error, let alone plain error, in the length of Pinela–Hernandez's sentence.

## V

Because we conclude that the agents had probable cause to search the car and that the length of the sentence imposed is not improper under *Apprendi,* the judgment of the district court is AFFIRMED.