CALLAHAN, Circuit Judge,
dissenting:
The police acted admirably, reasonably, and lawfully throughout the events giving rise to this case. Accordingly, I respectfully dissent.
The initial stop of the car was lawful. Officer Moody testified that there was a stark difference between the color listed on the car registration records and the actual color of the car. Officer Moody, an experienced police officer, thought this discrepancy to be suggestive that the car was stolen. Further, the stop was made at 3:30 a.m., in a high-crime area that had a prevalence of car thefts. These factors were more than sufficient to support a finding of reasonable suspicion. See United States v. Malone, 886 F.2d 1162, 1165 (9th Cir.1989) (“Wholly lawful conduct may justify a reasonable suspicion of criminal activity.”) (internal citation omitted).
For a search to be lawful under United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), there must be “probable cause to believe that contraband [or evidence] is concealed somewhere within” the car. Id. at 800, 102 S.Ct. 2157. As the majority notes, probable cause to search is evaluated in light of the totality of the circumstances. United States v. Pinela-Hernandez, 262 F.3d 974, 978 (9th Cir.2001). Thus, context is key. Here, when the search is considered in context, it was supported by probable cause, and thus justified under Ross.
In the wee hours of the morning and in a high crime area known for juvenile prostitution, Officer Moody had stopped Rodgers, a man in his fifties who was driving a young girl. The girl appeared to be only twelve or fourteen years old, and she was “nervous” and “didn’t want to make eye contact.” She told Officer Moody that she did not have any identification. Meanwhile, the older man told Officer Moody that the girl was “a friend” of his, which— under the circumstances — aroused Officer Moody’s suspicions. Understandably, Officer Moody was concerned that the girl was an underage prostitute and the man was *1032 “pimping [her] out,” or that the girl was a runaway or a missing person. He simply did not know. So, he continued to investigate.
He asked the girl her name and birth-date, and the girl said that she was nineteen years old and provided a birthdate consistent with that age. Based on his observations about the girl’s youthful appearance, Officer Moody thought she was lying, and he ran a police records check on the information she gave him. He discovered that there was an outstanding arrest warrant on a robbery charge for a sixteen year-old with the same name, month, and day of birth that the girl had provided. Officer Moody thought the young girl was “possibly” the same person named in the warrant, which would make her sixteen years old. He did not know her true identity or her relationship to the older man, and he reasonably believed that she had already lied to him once. Under these circumstances, Officer Moody did what any reasonable officer would do, and what any parent or concerned member of the public would want an officer to do when a young girl’s life may be in danger: he continued to investigate.
He called for backup, and when another officer arrived on the scene, Officer Moody asked him to estimate the age of the young girl. The other officer said he thought the girl was only twelve years old. At this point, the girl and the older man were told to exit the car, and upon further police questioning the man changed his story and said he had just met the girl (as opposed to his earlier statement that she was “a friend” of his), and that he was giving her a ride at another friend’s request.
At this point, Officer Moody had serious concerns as to the girl’s age, identity, and the reason(s) for her presence in the car.
He did know that she was riding in a car with a much older man, in the early morning hours and in an area known for juvenile prostitution, and that the older man had changed his story about his relationship with the girl. He also knew that from all appearances, the girl had lied about her age, thus committing the crimes of making a false statement to a police officer and obstructing a law enforcement officer.
Officer Moody thought that, despite what the girl had told him earlier, she did have some identification with her because “if she’s going to stick with a story about being 19 years old, I know that, based on my training and experience, most 19-year-olds have some form of identification.” On the other hand, she might be as young as 12, and in that case she might have identification in the form of an “ASB card”[1] or “YMCA card.” Identification for the girl, whether false or real, would be evidence of her crimes of making a false statement or obstruction. Identification could also offer insight as to whether the girl needed police protection. Under these circumstances, Officer Moody reasonably searched the “lunge area of the car” — the area in which she could have hidden her identification — for identification, and found the evidence that Rodgers now seeks to suppress.
Contrary to the majority view, the above facts do support a finding of probable cause for the search. Identification such as drivers’ licenses, “ASB” cards, and “YMCA” cards are obviously small enough to be easily stashed in car compartments and alcoves. Here, Officer Moody correctly suspected that the girl and her older male companion were hiding the girl’s true age, and he was reasonable in suspecting that they were hiding their relationship and their plans for the late hour. Believ *1033 ing that the girl had already lied about her age, it was certainly reasonable for Officer Moody to suspect that she had also lied about not having identification with her. Accordingly, he reasonably searched the lunge area of the car.
The majority notes that Officer Moody did not observe a bag or a purse where identification could be stashed, but the lack of a bag or purse only heightened the possibility that the girl may have hidden her identification in the car. Given that the girl was pretending to be nineteen, she may have hidden false identification to support that story, which would be evidence of her crimes of making a false statement or obstruction. Or, she may have hidden real identification, such as a YMCA card, which might reflect that she was not, in fact, nineteen. That would also be evidence of her crimes. Officer Moody already thought the girl was lying about her age, so it makes sense that he disbelieved her comment that she did not have any identification on her.[2]
Probable cause does not require airtight certainty. See United, States v. Gourde, 440 F.3d 1065, 1069 (9th Cir.2006) (en banc). In close cases where a child’s life may be in danger, police officers should receive the benefit of the doubt — not hindsight admonitions from the bench. Here, the facts known to Officer Moody at the time of the search were sufficient to support probable cause, and the search was lawful under Ross.
In addition, although the Government did not rely on Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), we can affirm on any grounds supported by the record. Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir.2008). Here, Gant authorizes the search because it was reasonable for Officer Moody to believe that the lunge area of the car contained some identification for the young girl, and identification would be evidence of two crimes for which she was arrested (i.e., making a false statement and obstruction). Moreover, the identification might reveal whether the girl was a minor, and in need of protection. Even if the probable cause standard were not met here — which it is, as explained above — the facts are sufficient to support the “reasonable to believe” standard set forth in Gant.
*1034 For the reasons set forth above, I respectfully dissent.

. This term is not defined in the record, but presumably Officer Moody was referring to an identification card issued by a school, an "Associated Student Body" card.

. The majority dismisses these scenarios as mere "hunches” and asks, "Do Associated Student Body cards even exist anymore? Does a YMCA card even contain an individual’s age?” Majority at 1030. I do not know the answers to these questions — and neither does the majority — but in any case they are not dispositive. Officer Moody testified about his belief that the young girl may have had an ASB or YMCA card that would shed light on her true identity, and this belief was reasonable under the circumstances (particularly since it appears that neither the majority nor myself knows enough about ASB and YMCA cards to suggest otherwise). Officer Moody also testified to his belief that the girl might have identification because she was "sticking] to a story about being 19 years old.” Notably, the district court found Officer Moody to be "entirely believable.”
Contrary to what the majority states, what Officer Moody "knew” that night was more than just that the girl had lied about her age. Majority at 1030. As I stated earlier, context is key. A girl and an older man were traveling together at a late hour in an area known for underage prostitution; the girl looked incredibly young and was lying about her age; the older man was changing his story about who the girl was and why she was with him; identification cards are easily stashed in small places; and there was no purse or bag anywhere near the girl (which might suggest an alternate place to keep identification). These facts and others, as well as inferences that logically flow from them, reasonably suggested to Officer Moody that he would find identification for the girl in the lunge area of the car. Officer Moody’s search of the lunge area was supported by probable cause.