**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

OCT 20 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-30009 |
| Plaintiff-Appellee, | D.C. No. 4:19-cr-00303-BLW-1 |
| v. | |
| CODY J MOORE, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Submitted October 2, 2023[**]
Seattle, Washington

Before: WARDLAW and M. SMITH, Circuit Judges, and MATSUMOTO,[***]
District Judge.

Cody Moore entered a conditional guilty plea to one count of conspiracy to

distribute methamphetamine and two counts of possession with intent to distribute

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Kiyo A. Matsumoto, United States District Judge for
the Eastern District of New York, sitting by designation.

methamphetamine, reserving his right to appeal the district court's denial of his motion to suppress evidence obtained from a cell-site location information ("CSLI") warrant and the subsequent stop and search of his vehicle. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The district court correctly concluded that Detective Tuttle's affidavit in support of the CSLI warrant established sufficient probable cause. *See United States v. Elmore*, 917 F.3d 1068, 1074 (9th Cir. 2019) ("Probable cause exists where the totality of the circumstances indicates a fair probability that. . .evidence of a crime will be found in a particular place." (internal quotation marks omitted)). The affidavit contained the statements of two confidential informants who connected Moore to the drug-trafficking conspiracy. Although the affidavit alone did not establish the reliability of these informants, law enforcement was able to corroborate some of the informants' information, and "the interlocking nature of their stories enhanced their credibility." *United States v. Hernandez-Escarsega,* 886 F.2d 1560, 1566 (9th Cir. 1989). Furthermore, Moore's toll records showed that he was in contact with at least three other members of the conspiracy, and the affidavit contained significant evidence linking each of these three coconspirators to the drug-trafficking operation. Therefore, "[a]lthough no single piece of evidence by itself is conclusive, viewed together the 'totality of the circumstances' was sufficient to establish probable cause to believe that evidence of drug-related

activity would be found . . . " *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985).

2.      The district court did not err by refusing to exclude evidence pursuant to Idaho Criminal Rule 41.  Rule 41(a) provides, "[i]f it does not appear that the property or person sought is currently within the State of Idaho, the warrant may still be issued; however, the fact the warrant is issued is not deemed as granting authority to serve the warrant outside the territorial boundaries of the State."  I.C.R. 41(a).  However, the federal Stored Communications Act ("SCA") authorizes the government to execute a warrant on a provider of electronic communications if the warrant is issued "by a court of competent jurisdiction" and, "in the case of a State court, issued using State warrant procedures."  18 U.S.C. § 2703(c)(1)(A).  Because the Idaho state court qualifies as "a court of competent jurisdiction," *see* 18 U.S.C. § 2711(3)(B), and because "[Rule 41(a)] was amended to expressly authorize warrants for property located outside the territorial boundaries of the state," *State v. Branigh*, 313 P.3d 732, 740 (Idaho 2013), Idaho's "State warrant procedures" permit extraterritorial CSLI warrants under the SCA.  Therefore, law enforcement did not violate Rule 41(a) by serving Moore's CSLI warrant outside of Idaho.

Rule 41 also requires that a warrant "command the officer to search, within a specified period of time, not to exceed 14 days."  I.C.R. 41(d)(3).  The CSLI warrant at issue here authorized law enforcement to monitor Moore's cell-site

3

location data for 30 days.  But even if we agree that this was a technical violation of Rule 41(d)(3), "the settled ruled in the Ninth Circuit is that a purely technical violation of [the analogous Federal Criminal] Rule 41 does not require the suppression of evidence otherwise legally obtained."  *United States v. Ritter*, 752 F.2d 435, 441 (9th Cir. 1985).  And the "rules that the officers violated were those of state law alone, and . . . it is not the province of the Fourth Amendment to enforce state law."  *See Virginia v. Moore*, 553 U.S. 164, 178 (2008).  Therefore, this technical violation of state Criminal Rule 41 does not rise to the level of a Fourth Amendment constitutional violation that would warrant suppression of evidence.

3.  The district court properly concluded that Officer Gallegos had reasonable suspicion to conduct the traffic stop of Moore's vehicle.  In *Whren v. United States*, 517 U.S. 806, 813 (1996), the Supreme Court held that its precedent "foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."  Therefore, "*Whren* permits an officer to conduct a pretextual traffic stop as a means to uncover other criminal activity" so long as the officer "reasonably suspect[s] a traffic law violation."  *United States v. King*, 244 F.3d 736, 738 (9th Cir. 2001).

Here, the district court credited testimony by Officer Gallegos that he witnessed Moore commit a traffic violation by crossing the center line twice.

4

Officer Gallegos therefore had reasonable suspicion sufficient to legally stop Moore's vehicle even though he also suspected Moore of trafficking methamphetamine. *See Whren*, 517 U.S. at 813. And even if Officer Gallegos had not actually witnessed a traffic violation, as Moore contends, the traffic stop was constitutional because, "[s]o long as the facts known to the officer establish reasonable suspicion to justify an investigatory stop, the stop is lawful even if the officer falsely cites as the basis for the stop a ground that is not supported by reasonable suspicion." *Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016). Therefore, because Officer Gallegos had reasonable suspicion to believe that Moore was transporting methamphetamine based on information provided to him during the investigative team's briefing, Officer Gallegos had reasonable suspicion to justify the investigatory stop even if he incorrectly cited the traffic violation as the reason for stopping Moore's vehicle.

4.     The district court also correctly concluded that law enforcement did not violate Moore's Fourth Amendment rights by impermissibly extending the scope of the traffic stop. An officer cannot prolong an ordinary traffic stop "unless the officer had independent reasonable suspicion to support such a prolongation." *United States v. Evans*, 786 F.3d 779, 787 (9th Cir. 2015). However, because "a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle," *Maryland v. Wilson*, 519 U.S. 408, 410 (1997), Officer

5

Gallegos acted lawfully by ordering Moore out of his car. And "[o]nce outside the stopped vehicle, the driver may also be patted down for weapons if the officer reasonably concludes that the driver might be armed and presently dangerous." *United States v. Taylor*, 60 F.4th 1233, 1240 (9th Cir. 2023) (internal citation and quotation marks omitted). Because of Moore's known history of firearm use and the fact that he was suspected of trafficking methamphetamine, Officer Gallegos had legitimate safety concerns based on the reasonable suspicion that Moore was armed and dangerous, justifying his pat down of Moore. Therefore, because Officer Gallegos lawfully conducted the traffic stop, ordered Moore out of the vehicle, and conducted the pat down, he did not impermissibly extend the scope of the stop in violation of the Fourth Amendment.

5. Nor did the district court err by concluding that law enforcement conducted a lawful search when the police dog entered Moore's vehicle during its drug-detection sniff. Although law enforcement may not conduct a dog sniff of a person's home or its immediate surroundings without a warrant, *see Florida v. Jardines*, 569 U.S. 1, 11–12 (2013), police are not required to obtain a warrant before conducting a dog sniff of a vehicle during a lawful traffic stop, *see Illinois v. Caballes*, 543 U.S. 405, 409–10 (2005). Therefore, because Officer Gallegos lawfully stopped Moore's vehicle, the subsequent use of a drug-detection dog to sniff the car's exterior was permissible. That the dog entered Moore's vehicle

6

through an open car door does not render the dog sniff unconstitutional, because police may "conduct a warrantless search of a vehicle if they have probable cause to believe that it contains contraband." *United States v. Pinela-Hernandez*, 262 F.3d 974, 977–78 (9th Cir. 2001). Here, the dog did not enter the vehicle until after it had alerted to the presence of drugs on the vehicle's exterior and after heroin was found on one of the vehicle's passengers during the pat down. Because this created "a fair probability that evidence of a crime" would be found in Moore's vehicle, *Elmore*, 917 F.3d at 1074, the officers had probable cause to search the car's interior by the time the dog jumped inside. *See United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir. 2000) (officers had probable cause to search a vehicle subsequent to a lawful traffic stop after a dog alerted to presence of drugs in the trunk and glove box). Therefore, the dog's entrance into Moore's vehicle did not violate Moore's Fourth Amendment rights.

**AFFIRMED.**